[No. 13365. Department Two. — February 28, 1890.]

## N. C. FARNUM ET AL., APPELLANTS, v. PHŒNIX INSURANCE COMPANY, RESPONDENT.

FIRE INSURANCE — WAIVER OF CONDITION AS TO PREPAYMENT OF PREMIUM — EXTENSION OF CREDIT UPON DELIVERED POLICY. — An express provision in a policy of insurance that the company shall not be liable on the policy until the premium is actually paid is waived by the unconditional delivery of the policy to the assured as a completed and executed contract under an express or implied agreement that a credit shall be given for the premium, and the company is liable for a loss which may occur during the period of credit.

ID. — ESTOPPEL OF INSURANCE COMPANY — ACKNOWLEDGMENT OF RECEIPT OF PREMIUM — IMPLIED ACKNOWLEDGMENT — EXECUTORY CONTRACT FOR PREMIUM. — If an insurance policy contains a formal receipt of premium, its unconditional delivery is conclusive evidence of payment, so far as to estop the company issuing it from denying the validity of the policy, notwithstanding a declaration in the policy that it shall not be binding until the premium is actually paid; and the same result follows where the policy is delivered as a binding and completed contract upon a consideration expressed therein, the receipt of which is impliedly acknowledged, an authorized credit having been agreed upon as a substitute for cash payment, and there being a promise to pay the premium at a future time in consideration of the contract to insure.

ID. — AUTHORITY OF LOCAL AGENT — POWER TO COUNTERSIGN AND DELIVER POLICY — CONTRACT FOR UNAUTHORIZED CREDIT. — A local agent of an insurance company who has authority to make a consummated and binding contract of insurance by countersigning and deliver-

ing its policy, and to extend a limited credit for the premium, has the power of the company to waive a condition in the policy that it shall not be binding until the premium is actually paid, and does waive such condition by delivering the policy unconditionally under an agreement for credit, though the term of credit given be in excess of his actual authority.

ID. — REMEDY FOR UNAUTHORIZED TERM OF CREDIT — CANCELLATION OF POLICY FOR NON-PAYMENT — NOTICE TO ASSURED — NON-RECEIPT OF NOTICE BY MAIL. — The giving of any credit by authority of the insurance company being a waiver of actual payment as a condition precedent to liability, the only remedy for an unauthorized term of credit is for the company personally to notify the assured, who is obligated to pay the premium, that he must pay at the end of the authorized term of credit, or that the policy will be canceled for non-payment of premium. If the notice is sent by mail, and is not received, the cancellation for non-payment of premium is ineffective.

ID. — CREDIT FOR TERM APPARENTLY AUTHORIZED — RIGHTS OF ASSURED — TENDER OF PREMIUM AFTER LOSS — NONSUIT. — An assured person is entitled to the whole term of credit for which he contracts with a local agent of an insurance company who has apparent authority to give credit for the premium, though the term of credit be in excess of the agent's real authority, if the assured had no knowledge of the limitation upon his power when the agreement for credit was made, and cannot thereafter be put in default for a failure to pay or tender the premium before the expiration of the credit actually given. A tender of the premium within such term of credit is a sufficient compliance with the condition of payment to sustain an action on the policy, though it be made after the loss has occurred, and be refused by the company. The company cannot refuse such tender, and then successfully insist upon a nonsuit because the premium was not actually paid.

ID. — OSTENSIBLE GENERAL POWER OF LOCAL AGENT — WAIVER OF CONDITIONS PRECEDENT — UNDISCLOSED LIMITATIONS OF POWER — EXCESS OF AUTHORITY. — A local agent of an insurance company who is clothed with ostensible general authority to solicit applications, receive proposals, make contracts for insurance, receive first premiums, and to countersign and deliver policies within certain limits, is presumed to have the general power of the company within those limits to waive conditions precedent to the liability of the company upon policies which he is authorized to countersign and deliver. Such local agent is presumed to have power co-extensive with the business intrusted to his care, and his powers will not be narrowed by limitations not communicated to the person with whom he deals; and he may bind his principal by any acts or contracts within the general scope of his apparent authority, notwithstanding an actual excess of authority.

ID. — CONDITION FOR WRITTEN INDORSEMENT OF WAIVER — ORAL WAIVER OF CONDITIONS PRECEDENT. — A condition in a policy that the use of general terms, or anything less than a distinct specific agreement, clearly expressed in writing, and indorsed on the policy, shall not be construed as a waiver of any printed or written condition or restriction

therein, though it constitutes a limitation upon the power of special agents after the policy has been delivered, does not preclude the oral waiver of a condition for prepayment of premium or of any conditions precedent to liability, where the power of the company is represented by the agent who delivers the policy unconditionally under a previous oral agreement to waive such conditions.

ID. — BREACH OF CONDITIONS PRECEDENT — KNOWLEDGE OF AUTHORIZED AGENT — WAIVER OF CONDITION AS TO INDORSEMENT. — The knowledge of the breach of any condition precedent to liability upon a policy which is fully known to an agent of an insurance company, local or general, who is authorized to consummate the contract of insurance, is the knowledge of the company, and his act in executing and delivering the policy as a valid and completed contract is the exercise of the power of the company, and constitutes a waiver by the company of such condition precedent, and also a waiver of the general requirement that waivers of conditions expressed in the policy shall be in writing indorsed on the policy.

ID. — LIMITATION UPON CAPACITY OF COMPANY TO CONTRACT — AUTHORITY OF AGENT TO WAIVE CONDITIONS ORALLY — QUESTION OF FACT. — An insurance company cannot so limit its capacity to contract by general stipulations against waiver of conditions, or that its contracts or waivers must be in writing, that it cannot by its agents make an oral contract or oral waiver not forbidden by the statute of frauds. Whether or not any particular agent has the general power of the company to make an oral contract or oral waiver of a condition notwithstanding the provision in the policy requiring a writing, is a question of fact.

ID. — ORAL WAIVER OF INDORSEMENT BY LOCAL AGENT — ESTOPPEL OF COMPANY AS TO ORIGINAL LIABILITY. — A local agent who is clothed with general power to consummate contracts of insurance within a certain territory stands in the stead of the insurance company, and represents its whole power to give validity to the contracts which he is authorized to execute and deliver, and to waive conditions precedent to its liability by oral agreement, including the condition as to the mode of waiver of such conditions precedent by indorsement in writing on the policy, so far as to estop the company from questioning its original liability by reason of non-indorsement of the waiver upon the policy when delivered.

ID. — CONDITION AS TO ARBITRATION OF LOSS — ACQUIESCENCE IN PROOFS OF LOSS — DENIAL OF LIABILITY — WAIVER. — When the policy provides for an arbitration of the amount of loss in case of a failure of the parties to agree, no arbitration is contemplated or required, except in that event; and if upon presentation of the proofs of loss by the assured the insurance company did not object to the amount or to the proofs, but denied its liability on other grounds, claiming that the policy did not exist, and that it had been canceled before the loss for non-payment of premium, this is sufficient evidence that the company acquiesced in the amount of loss claimed, and thereby waived its right to have it determined by arbitration.

Appeal from a judgment of the Superior Court of San Joaquin County.

The facts are stated in the opinion.

*Louttit, Woods & Levinsky,* for Appellants.

*J. C. Campbell,* and *P. W. Bennett,* for Respondent.

Vanclief, C. — The action is upon a policy of insurance, and the appeal is from a judgment of nonsuit.

The grounds of defendant's motion for nonsuit, and upon which the motion was granted, are presented by a bill of exceptions, and the record discloses the following facts:—

The defendant is a foreign fire insurance corporation doing business as such in this state, having general agents for the state located in San Francisco, and a duly appointed local agent for the county of San Joaquin located at Stockton. On May 2, 1887, plaintiffs verbally applied to the Stockton agent for a policy of insurance upon their frame barn, wind-mill, tank, and tank-house, situated about two miles southeast of Banta, in San Joaquin County. The land upon which these buildings stood was the property of G. W. Trahern, — the father of one of the plaintiffs, — who had permitted plaintiffs to erect the buildings thereon; but the buildings were the property of plaintiffs, who resided upon the land, and used and occupied the buildings. At the time the insurance was applied for, the local agent was informed that the land belonged to Trahern. The policy, as applied for, was issued insuring the buildings for the term of five years from May 1, 1887; the insurance on the barn being for one thousand dollars, and upon the other structures for two hundred dollars. The policy does not refer to the ownership of the land on which the buildings stood.

On September 5, 1887, the barn was totally destroyed by fire; and it was admitted that when destroyed it was

of the value of one thousand dollars.  Notice and proof of the loss were duly given and made by plaintiffs, upon receipt of which the defendant, without questioning the amount of the loss, denied all liability on the policy. No offer or request was made by either party to submit the question as to amount of the loss to arbitration. At the time of the fire and loss no part of the premium had been actually paid; but it was in evidence that the local agent of the defendant, at the time the policy was issued and delivered, verbally agreed and promised to give the plaintiffs a credit on the premium until October 1, 1887, and that the policy was taken by plaintiffs with that understanding and upon that condition, though the agreement for such credit was not indorsed in writing upon the policy.   The policy was countersigned by the local agent and delivered to plaintiffs on May 24, 1887. It was admitted that it was the custom of defendant to allow its agents to give credit for premiums for the term of *sixty days; and it was* proved that the local agent was, by virtue of his appointment, made responsible for the collection of all premiums on policies issued by him.   On June 25, 1887, the local agent mailed to plaintiffs at Banta a written notice stating that "the premium on policy No. 73,143, on barn, tank, etc., $1,200, amounting to $73.50, on five years' policy, falls due on the 1st of July, and our instructions from the home office are imperative to collect in sixty days," and inclosed in the same envelope was a notice that "unless the premium thereon shall be paid on or before twelve o'clock, noon, of July 1, 1887, we shall cancel the insurance under said policy on our books for non-payment of premium, without further notice, and terminate our liability thereunder from that date."   It was proved that there was a regular daily communication by mail between Stockton and Banta, but neither of the plaintiffs actually received said notice. At the expiration of the time named in the notice, the premium being still unpaid, the general agents of defend-

ant at San Francisco made an entry in the books in their office to the effect that the policy was canceled; but no notice of the cancellation was given to either of the plaintiffs. On September 30, 1887, plaintiffs tendered to the local agent of defendant the full amount of the premium, which he refused to receive. The pleadings admit that the amount of the premium was thereupon immediately deposited by plaintiffs subject to the order of defendant, and that defendant was notified in writing of such deposit, and payment of the amount to defendant is offered in the complaint.

The policy recites a consideration of $73.50, but does not expressly acknowledge receipt of payment. It contains the usual conditions of fire policies as to the use and occupancy of the premises. The following clauses are the only ones relevant to the points to be considered:—

"The company shall not be liable by virtue of this policy, or any renewal thereof, until the premium therefor be actually paid."

"The use of general terms, or anything less than a distinct specific agreement, clearly expressed and indorsed on this policy, shall not be construed as a waiver of any printed or written condition or restriction therein."

"The insurance may be terminated at any time, at the option of the company, on giving notice to that effect and refunding a ratable proportion of the premium for the unexpired term of the policy."

"The amount of solid value and of damage to the property . . . . may be determined by mutual agreement between the company and the assured, or failing to agree, the same shall be submitted to competent and impartial arbitrators."

"It is furthermore hereby expressly provided and mutually agreed that no suit or action against this company for the recovery of any claim by virtue of this policy shall be sustainable by any court of law or chancery until after an award shall have been obtained fixing

the amount of such claim in the manner above provided."

"In witness whereof, the Phœnix Insurance Company has caused these presents to be signed by its president and attested by its secretary in the city of Brooklyn, county of Kings, New York; but the same shall not be binding until countersigned by Henry C. Keyes, agent for the company at Stockton.

"STEPHEN CROWELL, President.

"PHILANDER SHAW, Secretary.

"Countersigned at Stockton this twenty-fourth day of May, 1887.          HENRY C. KEYES, Agent."

1. The defendant contends that there is no liability upon the policy, because the premium was not actually paid before the loss, and because the agreement for credit was not indorsed in writing upon the policy.

It seems to be settled by a controlling preponderance of authority that an express provision in a policy of insurance that the company shall not be liable on the policy until the premium be actually paid is waived by the unconditional delivery of the policy to the assured as a completed and executed contract under an express or implied agreement that a credit shall be given for the premium, and that in such case the company is liable for a loss which may occur during the period of the credit. (*Boehen* v. *Williamsburgh City Ins. Co.*, 35 N. Y. 131; *Wood* v. *P. M. Ins. Co.*, 32 N. Y. 619; *Goit* v. *National P. Ins. Co.*, 25 Barb. 190; *Trustees of Baptist Church* v. *Brooklyn Ins. Co.*, 18 Barb. 69; *Sheldon* v. *Atlantic Fire & M. Ins. Co.*, 26 N. Y. 460; 84 Am. Dec. 231; *Bodine* v. *Exchange Ins. Co.*, 51 N. Y. 117; 10 Am. Rep. 566; *Bowman* v. *Agricultural Ins. Co.*, 59 N. Y. 521; *Church* v. *Lafayette Fire Ins. Co.*, 66 N. Y. 222; *Washoe Tool Mfg. Co.* v. *Hibernia Ins. Co.*, 66 N. Y. 613; *Latiox* v. *Germania Ins. Co.*, 27 La. Ann. 113; *Pino* v. *Merchants' Mutual Ins. Co.*, 19 La. Ann. 233; 92 Am. Dec. 529; *Miss. Val. Life Ins. Co.* v. *Neyland*, 9 Bush, 439; *Heaton* v. *Manhattan*

*Fire Ins. Co.*, 7 R. I. 506; *Eagan* v. *Ætna Fire Ins. Co.*, 10 W. Va. 583; *Hodge* v. *Security Ins. Co.*, 33 Hun, 584; *O'Brien* v. *Union Mut. Ins. Co.*, 22 Fed. Rep. 586; *Tennant* v. *Travelers' Ins. Co.*, 31 Fed. Rep. 322; *Insurance Co.* v. *Norton*, 96 U. S. 234; *Young* v. *Hartford Fire Ins. Co.*, 45 Iowa, 378; 24 Am. Rep. 784; *Ball and Sage Wagon Co.* v. *Aurora Ins. Co.*, 20 Fed. Rep. 232; *Post* v. *Ætna Ins. Co.*, 43 Barb. 351; *Van Schoick* v. *Niagara Ins. Co.*, 38 N. Y. 440.) The reason for this rule is well expressed in the case last above cited, as follows: "The fact that the insurer delivered to the insured the written contract as the consummated agreement between them, and did not then exact present payment of the premium as a necessary precedent to delivery, was too plainly in contradiction with the condition for prepayment for it to be supposed that it was meant by the insurer or supposed by either party to make that condition a potent part of the contract. . . . . It would be imputing a fraudulent intent to the defendant in this case to say or to think that they did not mean, when they delivered this policy to the plaintiff, to give him a valid and binding contract of insurance, or that they did not mean that he should believe that he had one, or that they did not suppose that he did so believe." In *American Central Ins. Co.* v. *McCrea*, 6 Lea, 520, 41 Am. Rep. 647, it is said: "It seems to be well settled that when a contract of insurance is executed with a full knowledge of an existing fact which would render it void under a condition precedent embodied therein, the condition of its breach will be considered as waived, because, otherwise, it would be an unmeaning form, the only effect of which would be to deceive and defraud."

In *Tennant* v. *Travelers' Insurance Company*, 31 Fed. Rep. 322, Ross, J., holds that an extension of credit for an insurance premium pursuant to custom, by an agent having power to countersign a renewal receipt upon a life policy, made the renewal of the policy binding in

favor of the assured, notwithstanding the terms of the policy making the actual payment of the premium a condition precedent to the binding force of the renewal, and notwithstanding the death of the insured before the payment of the premium; and assigns as the reason for so holding that " it would manifestly operate as a fraud upon him to hold that the insurance did not become operative until the premium was actually paid." It should also be remarked that it would be manifestly unjust for an insurance company which extends the time for the payment of the premium upon an executed and delivered policy to charge the full amount of premium upon the risk for the entire period covered by the policy, and to accept such full amount at the expiration of that period if no loss occurred meanwhile, and yet to deny the validity of the policy and its liability upon it during the period of credit in case a loss should occur during that period.

In this case the local agent of defendant at Stockton had unquestionable power to extend a credit upon the premium for the period of at least sixty days. He represented the full power of the company to make a consummated and binding contract of insurance by countersigning and delivering the policy; and when he countersigned and delivered it unconditionally as a completed contract, under a specific agreement for payment of the premium at a future date, he thereby waived, to the full extent to which the company itself could then have waived, the actual payment of the premium as a condition precedent to its liability on the policy. "An insurance agent clothed with authority to make contracts of insurance or to issue policies stands in the stead of the company to the assured." (*Ricard* v. *Queen's Ins. Co.*, 62 Miss. 728.) ·

In *Universal F. Ins. Co.* v. *Block*, 109 Pa. St. 538, it was held that the countersignature of an authorized agent upon a policy which is unconditionally delivered by him

to the insured, and which, by its terms, requires such countersigning to make it valid, is a virtual acknowledgment of the receipt of premium, and estops the company to deny the validity of the policy upon the ground that the premium was not actually received by the officers of the company.

The policy in this case does not formally express receipt of premium, but it recites a consideration of $73.50 for the contract of insurance, and declares that the policy shall not be binding until countersigned by the agent at Stockton, and thus impliedly authorizes him to consummate a binding contract of insurance for the consideration expressed. If the policy had contained a formal receipt of premium, its unconditional delivery would have been conclusive evidence of payment, so as to have estopped the defendant from denying the validity of the policy notwithstanding the declaration in it that it shall not be binding until the premium is actually paid (Civ. Code, sec. 2598; *Basch* v. *Humboldt etc. Ins. Co.,* 35 N. J. L. 429; *Prov. Life Ins. Co.* v. *Fennell,* 49 Ill. 180); and upon principle the same result should follow where the policy is delivered as a valid and completed contract upon a consideration expressed therein, the receipt of which is impliedly acknowledged, an authorized credit having been agreed upon as an equivalent and substitute for cash payment. The promise to pay the premium at a future time was a sufficient consideration for the contract to insure, as there can be no question that the promise to pay at a future day was binding on the plaintiffs, and could have been enforced by the defendant.

It is no answer to this to say that the Stockton agent was not authorized to give so long a credit as that given in this case,—from May 2 to October 1, 1887,—but was limited to a credit of sixty days; for it is sufficient that he had authority to give a credit of sixty days. The credit given was a valid credit for sixty days, at least, and the giving of *any* credit by authority of the company

was a waiver of actual payment as a condition precedent
to the liability of the company. The only remedy of the
company thereafter was to rescind or to cancel the policy
for non-payment of the premium within the sixty days,
upon personal notice to the plaintiffs, which the bill of
exceptions shows was not received by either of the plain-
tiffs. When credit is given by an insurance company,
it has no right to cancel the policy for non-payment of
premium, except after putting the insured in default
(*Latiox* v. *Germania Ins. Co.*, 27 La. Ann. 113), and per-
sonal notice of intended cancellation must be given to
the insured. (*Insurance Co.* v. *Turnbull*, 86 Ky. 230.)

If the notice is sent by mail, and not received, as in this
case, the cancellation for non-payment of premium is
ineffective. (*Mullen* v. *Dorchester Mutual F. Ins. Co.*, 121
Mass. 171.) Notice of cancellation to the agent who
negotiated the policy will not bind the assured (*Grace* v.
*American Central Ins. Co.*, 109 U. S. 278; *Mutual Assur-
ance Society* v. *Scottish U. & N. Ins. Co.*, 84 Va. 116;
*London & L. F. Ins. Co.* v. *Turnbull*, 86 Ky. 230); nor to
any other person than the one obligated to pay the pre-
mium. (*Chadbourne* v. *German-American Ins. Co.*, 31
Fed. Rep. 533.)

Again, the local agent at Stockton, being clothed with
general power to receive proposals for insurance, and to
countersign and deliver policies in San Joaquin County,
is presumed to have the power of the company within
that county to waive the immediate payment of pre-
miums, and to make contracts for credit. (*Ball and Sage
Wagon Co.* v *Aurora F. & M. Ins. Co.*, 20 Fed. Rep. 232;
*Post* v. *Ætna Ins. Co.*, 43 Barb. 351.)

Whether an agent has general or only particular
powers is not determined by simply calling him a local
agent. (*Murphy* v. *Southern L. Ins. Co.*, 3 Baxt. 448;
27 Am. Rep. 761.) An agent who under general in-
struction from the home office has authority within a
certain territory to deliver policies and receive premiums

is a general agent, and has authority to waive cash pay-
ment. (*Southern Life Ins. Co.* v. *Booker*, 9 Heisk. 606;
24 Am. Dec. 344.)  A local insurance agent is presumed
to have power co-extensive with the business intrusted
to his care, and his powers will not be narrowed by limi-
tations not communicated to the person with whom he
deals. (*Baubie* v. *Ætna Ins. Co.*, 2 Dill. 156.)  Where
by the terms of a policy a particular local agent is to
countersign it to make it valid, so that the insured must
deal with him, and no one else, he represents the power
of the company, so that any policy which he counter-
signs binds the company to any person insured through
his agency who has no notice of limitation of his power,
though he may have exceeded his authority and violated
his duty to his principal. (*Westchester F. Ins. Co.* v.
*Earle*, 33 Mich. 151–153; *Viele* v. *Germania Ins. Co.*, 26
Iowa, 58; 96 Am. Dec. 83; *Murphy* v. *Southern L. Ins. Co.*,
3 Baxt. 440; 27 Am. Rep. 761; *Whited* v. *Germania Ins.
Co.*, 76 N. Y. 415; 32 Am. Rep. 330.)

A local agent having ostensible general authority to
solicit applications and make contracts for insurance,
and to receive first premiums, binds his principal by
any acts or contracts within the general scope of his
apparent authority, notwithstanding an actual excess of
authority. (*Insurance Co.* v. *Wilkinson*, 13 Wall. 234;
*Miss. Valley L. Ins. Co.* v. *Neyland*, 9 Bush, 436; *Rivera*
v. *Queen's Ins. Co.*, 62 Miss. 721; *Insurance Co.* v. *McLan-
athan*, 11 Kan. 533; *Continental Ins. Co.* v. *Kasey*, 25
Gratt. 271; 18 Am. Rep. 681; *Wheeton* v. *Insurance Co.*, 76
Cal. 415; *Nat. Mut. F. Ins. Co.* v. *Barnes*, 21 Pac. Rep.
165; *Western Ins. Co.* v. *Hogue*, 21 Pac. Rep. 641.)  By
the authorities above cited, it appears that the plain-
tiffs were entitled to the whole term of the credit for
which they contracted through the defendant's local
agent, and could not thereafter be put in default for a
failure to pay or tender the premium before the expira-
tion of the period of credit actually given. That credit,

from May 2 until October 1, 1887, was actually given must be assumed as a fact for the purposes of the motion for a nonsuit, it appearing from the bill of exceptions that evidence to that effect was given on behalf of the plaintiffs without any counter-evidence whatever, unless the contents of the letter addressed to the plaintiffs by the defendant's agent at Stockton may be so construed. That letter only purports to notify them that "instructions from the home office are imperative to collect in sixty days," and that the premium "*falls due* on the 1st of July,"—two months after the policy was delivered, —thus clearly indicating that a credit of sixty days had been given with the sanction of the company; but as the letter was not received by the plaintiffs, it can have no effect as evidence *against* them for any purpose. It also appears by the terms of the written appointment of the local agent that he was made responsible to the company for the collection of all premiums on policies issued by him, and that it was the custom of the company to allow its agents to give a credit of sixty days on premiums. From these facts it may fairly be inferred that the company was content to substitute the personal liability of the agent for the condition of prepayment of the premium. (*Elkins & Co.* v. *Susquehanna F. Ins. Co.*, 113 Pa. St. 386–394; *Lebanon Mut. Ins. Co.* v. *Howes*, 113 Pa. St. 591; *Susquehanna F. Ins. Co.* v. *Elkins*, 124 Pa. St. 484.)

It is urged by respondent's counsel that actual payment of the premium is a condition precedent to a recovery upon the policy, notwithstanding an agreement for credit, and that it was so decided in *Bergson* v. *Builders' Ins. Co.*, 38 Cal. 546. But it appeared in that case that issue was taken on the fact of payment, and that there never was any actual payment or tender of the whole premium, and that the policy was canceled for non-payment of a part of the premium within the period of the credit given by the company, and after due no-

tice. The case also holds that an acknowledgment of the receipt of the premium in a delivered policy may be contradicted so as to defeat a recovery upon the policy; but this rule has been changed by section 2598 of the Civil Code. The decision in that case is no authority against the position that a tender of payment of the premium in full, *within the term of the credit allowed,* is a sufficient compliance with the condition of payment to sustain an action on the policy. The company cannot refuse such a tender, and then successfully insist upon a nonsuit because the premium was not actually paid. (*Eagan* v. *Ætna F. & M. Ins. Co.*, 10 W. Va. 588; *Boehen Williamsburgh City Ins. Co.*, 35 N. Y. 132; 90 Am. Rep. 787; *Bodine* v. *Exchange F. Ins. Co.*, 51 N. Y. 119; 10 Am. Rep. 566; Civ. Code, sec. 1485.)

2. The next important question relates to the effect of the provision in the policy that "the use of general terms, or anything less than a distinct specific agreement, clearly expressed and indorsed on this policy, shall not be construed as a waiver of any printed or written condition or restriction herein." So far as such a provision has been held to constitute a limitation upon the power of agents, it has been applied to cases of waiver of conditions made *after the signing and delivery* of the policy as a consummated contract, such as the waiver of conditions relating to assignment of the policy, to increase of risk, or to occupancy of the insured premises. (*Shuggart* v. *Lycoming F. Ins. Co.*, 55 Cal. 408; *Gladding* v. *C. F. M. I. A.*, 66 Cal. 6; *Enos* v. *Sun Ins. Co.*, 67 Cal. 621; *Walsh* v. *Hartford F. Ins. Co.*, 73 N. Y. 5.) In the last case cited, it is expressly held that the conclusion that such a provision limits the power of agents *after the policy has been delivered,* and the restriction upon their power to waive conditions as to the use or vacancy of the premises, known to the insured, "does not interfere with that class of cases which have established that conditions for prepayment of premium and

the like which enter into the validity of the contract of insurance *at its inception* may be waived by agents, and are waived if so intended."

It has been expressly adjudged by the supreme court of Iowa, in a well-considered case, that the insured is not bound to take notice of conditions in the policy that the premium must be actually paid, nor of the provision that the waiver of condition must be indorsed in writing on the policy when the policy is executed and delivered to him as a valid and completed contract by an agent having authority to countersign it, and who, before or at the time of the delivery of it, has given the insured a credit upon the premium by parol; and that if a loss occurs in such case before the credit expires, the company is bound, notwithstanding that the agreement for credit was not indorsed upon the policy. (*Young* v. *Hartford Fire Ins. Co.*, 45 Iowa, 378; 24 Am. Rep. 784.)

And it has been repeatedly held that where any fact which would constitute a breach of a condition precedent to any liability of the company on the policy is fully known to an agent of the company, local or general, who is authorized to consummate the contract of insurance, the knowledge of such agent is the knowledge of the company, and his act in executing and delivering the policy as a valid and completed contract is an exercise of the power of the company, and constitutes a waiver by the company of such condition precedent, and also a waiver of the general requirement that waivers of conditions expressed in the policy shall be in writing indorsed on the policy. (*Van Schoick* v. *Niagara Fire Ins. Co.*, 68 N. Y. 434; *Whited* v. *Germania Fire Ins. Co.*, 76 N. Y. 418–421; *American Ins. Co.* v. *McCrea*, 8 Lea, 513–520; 41 Am. Rep. 647; *Reaper City Ins. Co.* v. *Jones*, 62 Ill. 458; *Westchester Fire Ins. Co.* v. *Earle*, 33 Mich. 151–153; *Viele* v. *Germania Ins. Co.*, 26 Iowa, 58; *Murphy* v. *Southern Life Ins. Co.*, 3 Baxt. 440; 27 Am. Rep. 761; *Gerb* v. *Insurance Co.*, 1 Dill. 449; *Devine* v. *Home Ins.*

*Co.*, 32 Wis. 471; *Pelkington* v. *National Ins. Co.*, 55 Mo. 172; *Planters' Mut. Ins. Co.* v. *Lyons*, 38 Tex. 253; *Peoria Ins. Co.* v. *Hall*, 12 Mich. 202; *Carroll* v. *Charter Oak Ins. Co.*, 38 Barb. 402; *Warren Mfg. Co.* v. *Ætna Ins. Co.*, 2 Paine, 501; *N. E. Fire Ins. Co.* v. *Schottler*, 38 Ill. 166.) It is also well settled that an insurance company cannot so limit its capacity to contract by general stipulations against waiver of conditions, or that its contracts or waivers must be in writing, that it cannot by its agents make an oral contract or an oral waiver not forbidden by the statute of frauds. (*Trustees of Baptist Church* v. *Brooklyn Ins. Co.*, 19 N. Y. 305; *Insurance Co.* v. *Norton*, 96 U. S. 234; *Carragi* v. *Atlantic Fire Ins. Co.*, 40 Ga. 141; *Lamberton* v. *Conn. Fire Ins. Co.*, 39 Minn. 129; *Westchester Fire Ins. Co.* v. *Earle*, 33 Mich. 153; *Reiner* v. *Dwelling House Ins. Co.*, 42 N. W. Rep. 208; *Steen* v. *Niagara Fire Ins. Co.*, 86 N. Y. 326; 42 Am. Rep. 297.)

Whether or not any particular agent has the general power of the company to make an oral contract or an oral waiver of a condition, notwithstanding the provision in the policy requiring a writing, is a question of fact. (*Insurance Co.* v. *Norton*, 66 U. S. 234; *Steen* v. *Niagara Fire Ins. Co.*, 86 N. Y. 326; 42 Am. Rep. 297.)

The authorities before cited show that a local agent who is clothed with general power to solicit and consummate contracts of insurance within a certain territory stands in the stead of the company, and represents its whole power to give validity to the contracts which he is authorized to execute and deliver, and to waive conditions precedent to liability by oral agreement, including the condition *as to the mode of waiver* of such conditions precedent. In this case, the circumstance that the company had general agents for the state located at San Francisco does not affect the question, since it conferred its whole power in regard to the policy in question upon its agent at Stockton, who appears to have received his appointment and instructions directly from

the home office, in the state of New York, and who signed himself as the direct agent of the defendant. Of the authorities hereinbefore cited, the following directly affirm the ostensible power of such a local agent to bind the company by waiver of any condition precedent to its liability, and to dispense with the requirement that such waiver shall be in writing indorsed on the policy, so far as to estop the company from questioning its original liability on the ground that the waiver made at the time of delivery of the policy was not indorsed upon it. (*Gerb* v. *Insurance Co.*, 1 Dill. 449; *Westchester F. Ins. Co.* v. *Earle*, 33 Mich. 151–153; *Whited* v. *Germania Fire Ins. Co.*, 76 N. Y. 418; *Viele* v. *Germania Ins. Co.*, 26 Iowa, 58; *Murphy* v. *Southern L. Ins. Co.*, 3 Baxt. 440; 27 Am. Rep. 761; *American Ins. Co.* v. *McCrea*, 8 Lea, 513–520.)

3. It is contended by counsel for respondent that the judgment of nonsuit should be sustained because the plaintiffs did not demand nor obtain an award of arbitrators as to the amount of loss. This, it is said, was a condition precedent to a right to maintain this action.

No arbitration is contemplated or required by the terms of the policy, except in case of a failure of the parties to agree upon the amount of the loss. After the fire, and within the time prescribed by the policy, the plaintiffs furnished to defendant the requisite proofs of loss to the extent of one thousand dollars, — the amount alleged in the complaint, — and thereupon, without questioning or making any objection to the amount of the loss claimed, or to the proofs thereof, the company, for other reasons, not only denied its liability, but *denied the existence of the policy*, claiming that it had been canceled two months before the loss. This was sufficient evidence that the defendant acquiesced in the amount of the loss claimed, and thereby waived its right to have it determined by arbitration. (*Lasher* v. *N. W. Nat. Ins. Co.*, 18 Hun, 98; 55 How. Pr. 318; *Western Horse and Cattle*

*Ins. Co.* v. *Putnam,* 20 Neb. 331; *Meutz* v. *American F. Ins. Co.,* 79 Pa. St. 478; 31 Am. Rep. 80; *Phœnix Ins. Co.* v. *Badger,* 53 Wis. 284; *Wallace* v. *German-American Ins. Co.,* 4 McCrary, 23; *Nurmey* v. *Fireman's Ins. Co.,* 30 N. W. Rep. 350.)   Then, it is well settled by a long line of authorities that the denial of all liability upon other grounds is a waiver even of the condition requiring proofs of loss.   (*Continental Ins. Co.* v. *Ruckman,* 127 Ill. 364; *Phœnix Ins. Co.* v. *Spiess,* 8 S. W. Rep. 453; *Norwich etc. Ins. Co.* v. *W. M. Ins. Co.,* 34 Conn. 561; *McBride* v. *Republic Ins. Co.,* 30 Wis. 562; *Donahue* v. *Ins. Co.,* 56 Vt. 382; *Lebanon Ins. Co.* v. *Erb,* 112 Pa. St. 149; *Zielke* v. *London Ass. Co.,* 64 Wis. 442; *O'Brien* v. *Ohio Ins. Co.,* 52 Mich. 131; *Ball etc. Co.* v. *Aurora Ins. Co.,* 20 Fed. Rep. 232; *Carroll* v. *Girard F. Ins. Co.,* 72 Cal. 297.)   Under the circumstances, an offer by the plaintiffs to arbitrate would have been an idle act, which "the law neither does nor requires."   (Civ. Code, sec. 3532.)

None of the California cases cited to this point by respondent's counsel are opposed to the position here assumed.   In *Old Saucelito L. & D. D. Co.* v. *C. U. A. Co.,* 66 Cal. 253, there was an actual dispute as to the amount of the loss, and plaintiff alleged that it had offered to submit to arbitration; but the court found to the contrary.   So in the case of *Adams* v. *Insurance Companies,* 70 Cal. 198, it appears that the only dispute between the parties was an express dispute as to the amount of the loss.   In *Carroll* v. *Girard Fire Ins. Co.,* 72 Cal. 297, the difference as to the amount of loss had been submitted to arbitration and an award had been made. The defendant pleaded this award as a limitation upon the amount to be recovered, and the plea was held good.

As it appears from the bill of exceptions that the evidence on the part of the plaintiffs substantially, and even strongly, tended to prove all the facts necessary to entitle the plaintiffs to recover, I think the judgment of

nonsuit was erroneous, and should be reversed, and that the cause should be remanded for a new trial.

BELCHER, C. C., and HAYNE, C., concurred.

The COURT.—For the reasons given in the foregoing opinion, the judgment of nonsuit is reversed, and the cause remanded for a new trial.