NORRIS *et al. v.* MONARCH FIRE INS. Co. *et al.*

(*Jackson*, April Term, 1944.)

Opinion filed February 5, 1944.

R. LEE BARTELS, WALLACE LOPEZ, and SOHM, HUMPHREYS & LING, all of Memphis, for complainants.

FITZHUGH, MURRAH & FITZHUGH, of Memphis, for defendants.

MR. JUSTICE NEIL delivered the opinion of the Court.

The complainants filed their original bill in the Chancery Court of Shelby County against the defendants, seeking a recovery upon a fire insurance policy in the sum of $3,000. They alleged that they are and were the owners of certain property that was destroyed by fire and that the defendant insurance company, by its agent Geo. Holley, had issued to them a policy of insurance covering the property for $3,000; that the premiums were duly paid and proper proofs of loss were seasonably filed; that after the policy was issued they discovered that a mistake had been made in that it did not show a mortgage debt in the sum of $2,850 and that they advised the agent of this fact and he agreed to make the change, showing that the loss, if any, would be paid to them and to Lopez, Trustee, as their interests should appear; that said agent failed and refused to change the policy in this respect. It was further alleged that the company has failed to admit liability on the policy and has refused to pay in accordance with the terms thereof. The prayer of the bill was for a recovery of $3,000 with interest and the statutory penalty, also for a reformation of the policy to show that it covered the claim of Lopez, Trustee.

The defendant insurance company filed its answer denying liability and making a special denial of the allegations in the bill that there had been any agreement to correct the policy showing an indebtedness to Lopez,

Trustee. It further denied any bad faith in the issuance of the policy and averred that complainants were guilty of bad faith. It was further averred that the amount of the policy was by consent of the parties reduced from $3,000 to $500 and that it is only liable for this amount.

The defendant bank filed its answer, claiming certain indebtedness to it by assignment, etc., but the interests of the bank are not involved on this appeal.

The complainants demanded a jury to try the cause and it appears that the only issue submitted was the following: "Did complainant Harriet B. Norris sign an endorsement to the policy sued upon to the effect that the policy had been reduced to $500.00? (Answer yes or no.)" This issue was answered in the affirmative. The Chancellor overruled complainants' motion for a new trial and entered a decree in their favor in the sum of $500. They thereupon prayed and were granted an appeal to the Court of Appeals. In that Court it was assigned as error that the Chancellor should have sustained the motion made in behalf of W. E. Norris that a decree be entered in his favor for the full amount of the policy, and that the Chancellor should have submitted to the jury the question as to the authority of Harriet B. Norris to represent him as his agent in agreeing to reduction of the policy. There were other assignments which need not be here considered or discussed. The Court of Appeals reversed the decree of the Chancellor and entered a decree in favor of W. E. Norris for the full amount of the policy, holding that he was not bound by the act of his wife in signing the reduction agreement. The Court also held that the policy should have been reformed by the Chancellor to show the interest of Lopez, Trustee, and entered a decree accordingly. We here observe that there was no

specific error assigned in the Court of Appeals that the Chancellor committed error in refusing to reform the policy.

The defendant insurance company filed its petition for *certiorari*, which was granted. The cause has been heard upon the several assignments of error set out in the petition. It is unnecessary in our view of the case that we should consider these assignments separately. It is contended (1) the Court erred in "reversing the Chancellor and awarding a judgment decree against defendant in the sum of $3,000.00", for the reason that there was no assignment in the Court of Appeals of error by the Chancellor in not reforming the policy; (2) that the Court erred in holding and decreeing that the Norrises owned the property by the entireties because there is no evidence (no deed of conveyance) showing that the property was conveyed to them during coverture; (3) that the Court erred in holding that the defendant had waived its defense that the policy should not have been reformed; (4) that the Court erred in holding that "the only evidence tending to show her authority (Mrs. Norris' authority to act for Norris in reducing the policy) in that respect is by reason of the marital relation and that it is insufficient to bind him or affect his rights;" (5) the Court erred in holding and decreeing that the policy should be reformed in favor of the trustee Wallace Lopez; (6) the Court erred in holding and decreeing that "the only issue submitted to the jury as to whether or not Mrs. Norris signed the reduction agreement was not conclusive of the rights of W. E. Norris;" (7) the Court erred in awarding the trustee Lopez an amount in excess of the mortgage debt, and in awarding a reformation without a remand to determine the exact amount due; and (8)

the Court erred in holding and decreeing that "if any balance remains after such payment (payment of the mortgage debt), the trustee will pay the balance to W. E. Norris."

We agree with the finding of the Court of Appeals and also the Chancellor that the jury was correct in its verdict finding that Mrs. Norris signed the agreement reducing the policy to $500.

Passing to the question of the title to the property and the right and authority of Mrs. Norris to bind her husband, we think the Court of Appeals was not in error in holding that the complainants Norris and wife, Harriet B., owned the property jointly. While no deed of conveyance was insisted upon by defendant as the best evidence of title, it cannot be doubted that there was such an interest. Moreover, no defense was made that these parties did not have an insurable interest. The insurance policy filed as an exhibit shows the insured to be "W. E. Norris and Harriet B. Norris, wife." It is a fair inference to be drawn from all the evidence that there was an ownership by the entireties. The question of title was never considered as important by the insurance company until after the fire loss and after Mrs. Norris had signed the reduction agreement when it was then insisted that she acted for both herself and her husband. It cannot be doubted that the wife may be the agent of her husband, but agency cannot be inferred from the marital relationship alone or from the fact that the property was owned by the entireties. The authority cited by the Court of Appeals (*Young* v. *Brown,* 136 Tenn., 184, 188 S. W., 1149, and *McGehee* v. *Henry,* 144 Tenn., 548, 234 S. W., 509, 18 A. L. R., 103) fully supports its opinion. Complaint is made of the following state-

ment by the Court, "It was conveyed to W. E. Norris and Harriet B. Norris jointly during the marriage, and the insurance policy insured them jointly" because there is no evidence of a conveyance during coverture. The record, however, shows they joined in the mortgage to Lopez, Trustee, and the insurance policy named both of them, and Harriet B. Norris is described therein as "wife". In these circumstances, we think the burden was upon the defendant to show that Harriet B. Norris acted as agent for her husband in signing the reduction agreement or at least she acted within the apparent scope of her authority. There being no proof touching the matter of agency or apparent authority, we concur with the Court of Appeals in holding that the act of Harriet B. Norris in signing the reduction agreement did not bind for her husband. Before passing from this question it should be noted that during the trial the complainants moved the Court to be allowed to amend the bill to allege that Mrs. Norris was not authorized to act for her husband. This motion was disallowed on the ground that it was not raised in the pleadings. The defendant should have then and there accepted the issue and insisted upon complainant proving his averments. It is too late now to raise the question. The chief defense made was that the policy was reduced by mutual consent of the parties. W. E. Norris was a party and he testified that he had no knowledge of the reduction and that his wife had no authority to act for him. The few circumstances in the record pointing to her authority to act for her husband do not overcome his positive statement to the contrary.

At the conclusion of all the evidence the defendants' counsel stated to the Court, "The defendant for the purposes of the trial only abandons its defense that the

proofs of loss were not filed in time and that there was no notice of a mortgage on the property given the company.'' Defendant contends however that its agent did not consent to change the policy, showing that Lopez had an insurable interest to the amount of the mortgage debt. Having received notice, it was his duty then and there to notify Lopez, Trustee, that it would cancel the policy. Failing to do so, it was estopped to deny that the policy covered the amount of the loan as shown by the deed of trust. *Aetna Life Ins. Co.* v. *Fallow,* 110 Tenn., 720, 77 S. W., 937; *Farnum* v. *Ins. Co.,* 83 Cal., 246, 23 P., 869, 17 Am. St. Rep., 233.

It was not necessary for the full protection of the rights of the trustee that the Chancellor reform the policy. The learned Chancellor having refused a reformation, it was sufficient in the trustee's motion for a new trial that the Court was in error in not submitting an issue that was determinative of his rights. We think the motion, while rather general, fairly raised the question of the trustee's right to a reformation. The Court of Appeals quotes at length the testimony bearing upon notice given to Holley, the agent, and that he agreed to correct the policy so that the trustee's interests might be covered. We think the learned Chancellor was in error in not holding that this evidence was sufficiently strong to justify a reformation of the policy and that an issue should have been submitted to the jury touching that question. Not having submitted such an issue and the right to a reformation being purely a matter of equitable relief, and exclusively within the jurisdiction of a court of equity, this relief should have been granted. Defendants contend that the Chancellor was not in error because the evidence is not strong and convincing. We think the evidence, to

which reference is made in the Court of Appeals',opinion, is of a convincing character. Several witnesses testified that complainants notified the agent of the insurance company of the mortgage and that they desired the policy to be written as the one previously written by one Carrington Mason and that the said agent agreed to do so. We think the only purpose the complainants could have had in giving notice, to the company of the existence of the mortgage was to have the mortgagee's interest covered by the policy; otherwise, they were engaged in an idle ceremony. While the agent denied that he agreed to change it, we think, as did the Court of Appeals, that the preponderance of the evidence shows that notice was given and that he consented. In these circumstances it is not improper to apply the maxim that "Equity considers that as done which ought to have been done," and from the time notice was given the rights of the trustee under the policy became fixed. The Court of Appeals was not in error in so adjudging, regardless of defendants' contention here made that there was no assignment of error that the Chancellor erred in refusing a reformation. Moreover, it appears from the record that counsel for the defendant moved the Court to withdraw from the jury the issue of reformation (Tr. p. 174). The Chancellor having refused to submit such an issue to the jury on motion of the defendant, we think it was proper for the Court of Appeals to consider it *de novo*; also for this Court to consider it on petition for *certiorari*. In *Carpenter* v. *Wright,* 158 Tenn., 289, 298, 13 S. W. (2d), 51, 53, it was held:

"On appeal, there being no finding of the jury on this question, it is to be considered *de novo* as any other question arising on an appeal in equity.'"

See also *Nichols* v. *Cecil*, 106 Tenn., 455, 61 S. W., 768. In *Mutual Life Insurance Co.* v. *Burton*, 167 Tenn. 606, 614, 72 S. W. (2d), 778, 780, it was said:

"In *Carpenter* v. *Wright*, 158 Tenn., 289, 13 S. W. (2d), 51, followed in *Hibernia Bank & Trust Co.* v. *Boyd*, 164 Tenn., 376, 48 S. W. (2d), 1084, it was recognized that, although there is a jury trial as to some issues, those issues of fact as to which there is no finding of a jury are triable, on appeal in an equity case, *de novo* and without the necessity of a motion for a new trial."

Considering the entire record, we hold that the Court of Appeals was not in error in decreeing the defendant liable on the policy for the amount of the mortgage debt in favor of Wallace Lopez, Trustee. We think, however, that the Court was in error in awarding a judgment for $2,585 in his favor and that W. E. Norris is entitled to a decree for $3,000, the face of the policy plus interest, less the amount of the mortgage debt. There is no determinative evidence as to the value of the property destroyed, and the amount due the mortgagee is more or less indefinite. The owner of the mortgage, Stevens, testified the debt "approximated $2585.00," which represented principal and interest.

The cause will be reversed and remanded to determine (1) the loss sustained as result of the fire—in other words, the value of the property destroyed and covered by the policy; (2) the correct amount due on the mortgage indebtedness, and (3) if the amount of the loss exceeds the amount of such indebtedness, the excess will be paid to W. E. Norris. Defendant will pay the costs of the appeal.

All concur.